I. Baldwin moved for a rule to the Judge of . .. - . . - the District Court of the fifth District, to shew cause why a mandamus should not issue, commanding him to allow an appeal, from a decision ©f said Court, removing this cause to the second ' ■ . , . , , ° District to be tried there.
This application arose from a decision under the second section of the act supplementary to the act to organise the Supreme Court of the State of Louisiana, and to establish Courts of inferior jurisdiction therein, whioh provides w that when “ the Judge of any District Court shall have been “ consulted, or employed as counsel, before his i( appointment, to such office, in any suit,- *172 * brought before him, it shall be lawful for either ‘ party, to cause such suit to be transferred, be- ‘ fore the neighbouring District Courtprovided, 1 however, that the party wishing the exchange ‘ shall claim such change in his petition, or ‘ answer (as the case may be ) and, in suits that ‘ may have been brought previous to the appoint- ‘ ment of the Judge, shall be claimed at the return ‘ term, which shall be immediately transferred to ‘ the most convenient neighbouring District, by ‘ the clerk of the Court, and the expences, at-i tending such transfer, shall be paid' by the party “ claiming the same.”
The Judge, having been employed, as counsel for the defendant, an application was made by the plaiñtiff, to remove the cause to the next District for trial—after hearing the testimony taken, as to the most eligible District to send the cause to, the Court decided, that if should be transferred to the second District. From this decision the plaintiff prayed an appeal, alledging that the second was not the most convenient neighbouring District. The appeal was refused.
Baldwin in support of the rule.
If appears, from the evidence taken in the Court below, in deciding on this order of removal,; that the fifth District is more convenient than the second as to distance, the roads better; afid the facilities of attendance by the parties much *173 greater in the former, than the latter district-** these facts were incontestibly proved, not only by the evidence taken and filed with the petition, graying for the rule, but by a cópy • of a record also annexed to it—by which it would appear that several other causes, situated as this was in the Parish of St. Landry, were transferred to the fifth ■ District and Parish of Rapides. The necessity^ and justice of this Court’s interference is, therefore, obvious, and all that is necessary to shew to sustain the application made, is
1. That the decision is such a one as art appeal lies from :
2. That a mandamus is the proper remedy.
I. The 11th. section of the act to organise the Supreme Court of the State of Louisiana, provides “ that the final decisions and judgments, i A civil actions, in any of the said District Courts, where the matter in dispute exceeds 8 300, may be examined, and reversed or affirmed in the Supreme Court. ” This clause provides for and givesr an appeal from all decisions that ate final, as td the Court where they are rendered, as well as! to all those judgments that are final, as respects the cause which is the subject of examination. To construe it otherwise, would be to invest the Inferior Court with a power to nonsuit a plaintiff ad infinitum, from which decision no appeal could be had, as the judgment of nonsuit would* not *174 final in the cause. This judgment however was completely final in the Court of St. Landry-it put a termination to it there, which is sufficient to bring it, within the words of the act : but independently of this ground, the removal of this cause to an improper District, was in itself an act of dismissal, from which an appeal well lies. A party is hot obliged to follow his cause to. any other tribunal, blit that which by the law he is compelled to do, to tvit—the most convenient neighbouring District; and a decision, which transfers it to any other tribunal, is as much a dismissal of the suit, as a decree of the Court, expressly deciding so, would be. Were it otherwise it would be in the power of a Judge of an Inferior Court, as soon as a cause was commenced before him, to transfer it to the most extreme part of State, where the party could not follow it, except at an expense more ruinous to his interests, than Jiis total failure in the pursuit of his demand.
. This cause commenced in the western District, and, by the constitution and the law orga-nising the Supreme Court, all causes commenc-. ed there should be decided in the appellate Court; sitting for the District in which they originated : the order of removal transfers this cause to be tried in the eastern District: and from die decision given, an appeal must be taken to the supreme appellate tribunal sitting for that section of the State. So that the cause is not only dis *175 missed from the Court to which it belongs; but transferred from its natural and [proper appellate jurisdiction. ¡ -
II. If the Court, adopting this reasoning, should think, that an appeal will lie from a decision, amounting to a dismissal of tile cause, it will be easy to shew that a mandamus is the proper remedy to compel the Judge below to accord it—this writ, according to the practice in England and-in the United States, is always that used to compel Inferior Courts to do any act, the nonperformance of which, creates an injury to the party claiming the benefit of it. See Bacon's abridgment, vol. 4. (American editionJ 497, it is there defined “ the established remedy, and every day made use “ of to oblige Inferior Courts and magistrates to “* do that justice, which they are in duty and by virtue of their office obliged to do. ” If this then is a case, in which the Judge should have granted an appeal, his duty in according it was purely ministerial, and his failure to perform that duty, justifies this application, and demands the ' interference of this Court. He had in fact no-more right, on the ground of judicial discretion, to refuse this appeal, than he would to reject a similar application on a judgment, rendered in his Court, for the sum of ¡S 2,000, on the pretext that the lavv had made his judgment final to that amount. - In all cases where the act of the Le *176 an appeal, the duty of the Infetion Cmrt m according it is purely ministerial. The judgment rendered here, it has already been shown is one, on which the party had right to obtain the re-examination of the Supreme Court, and the Judge having failed to accord the means for that re-examination the proper remedy is the writ now'applied. 2 Henning £? Mumford, 132 137 : 2 Johnson, 371 : 7 ibid. 549. It is therefore hoped that the rule may issue.
A. Porter against the rule.
It is unnecessary to say any thing, as t<? the evi« dence taken to shew the impropriety of the original order of removal. That will come properly before, the Court, if the appeal should be granted, and an examination of the merits gone into. At this stage of the proceedings, the only question is whether the rule to shew cause ought to issue or not. That it ought not, is endeavoured to be shewn, on the following grounds.
1. Th i s Court has no power to direct a mandamus, the issuing of such a writ being an exer-cice of original, not appellate jurisdiction.
2. A mandamus never issues to compel an Inferior Court to pronounce a judicial decision, contrary to the opinion of the Court to whom it is addressed.
3. The decision given here was not a final judgment, and,by law.no appeal lay from it.
*177 I. The second section of the fourth article of the constitution of this State» creating the Supreme Court, has provided that it shall have appellate jurisdiction only.
If the granting of this application brings with'it the exercise of original, not appellate, jurisdiction, it must of course be rejected. ,
Appellate judicial jurisdiction means, necessarily, the revision of causes commenced before some other tribunal and decided there. The re-examination of some matter, originating before some Inferior Court, on which judgment has been pronounced and brought to the highest Court for the discovery and correction of error. It may be safely laid down, as an axiom, that there can be no appellate jurisdiction exercised, if the cause has not been commenced, proceedings had pn it, and judgment rendered in an Inferior Court—Harding's 509.
The proceedings here will want, however, all those features, which mark and distinguish appellate, from original jurisdiction, they will be seen in . truth to belong altogether to the latter.
So far from this being a revision, or re-examination, of a judgment, given in an Inferior Court, the proceedings will commence here. The rule to shew cause, why a mandamus should not be awarded, issues from this Court in the first instance. C The party, on whom it is served, may come in and traverse it if he pleases. 4 Bacon. A. *178 496; 520 3 Black stone 110. Should issue be joined, the facts must be ascertained by a trial, as' in a eommon case in the Inferior Court, by a jury or the Court, and .on the allegations heard in this Court, for the first time, judgment must be pronounced. It is difficult to conceive wfyat feature of original jurisdiction will be wanting here, or where any resemblance is traced in it to the exercise of appellate.
Isr the Supreme Court of Kentucky, this question has been decided—under a clause in their constitution containing a similar expression to that which is to be found in our own—that tribunal has determined that the issuing of the writ of mandamus in any case, was an exercise of original, not appellate jurisdiction, and that such jurisdiction, being denied them by the constitution, they could not award one under ^ny circumstance.
II. A mandamus never issues to compel a Judge of an Inferior Court to give a judgment, contrary to his opinion—-this writ, when directed to inferior tribunals, will be always found to have issued under the idea of some default; as where a ministerial officer will not do his duty, or the Court refuses to pronounce judgment. 1 Wilson 281, 2 Espinasse 668. But never to direct that - Court what judgment to give—in this case, the Judge' has decided that in his opinion no appeal *179 should be granted: and this Courtbas no authority to direct him to give any other decision. In the case of the United States vs. Judge Lawrence, 3 Dallas 42, an application similar to this to compel the Judge there, contrary to his opinion, to grant a warrant to apprehend captain Barré, was unanimously refused, on the ground, that the Judge was in the exercise of a judicial authority, in de-' ciding whether such a process should issue or not; and that, that Court, had no power to direct him how to decide—in a more modern, and still more analogous case, the commonwealth vs. the Judges of the common pleas of Philadelphia, 3 Binney 273—a motion was made for a rule to shew'cause, why a mandamus should not issue to the Judges of the common pleas, commanding them to reinstate an appeal they had dismissed. The application was refused on the same ground, that the Supreme Court of the United States in the case of Judge Lawrence determined not to interfere.
III. But should the ¿ourt decide that it possesses the power to issue a writ of mandamus, in any case, and to a Judge to do a judicial act, still the Judge below acted right in refusing the appeal, and this Court ought not to interfere—The 2d sect, of the act organising the Supreme Court &c. provides, “ that the final decisions and judg-41 ments in any of the District Courts may be *180 re-examined and reversed or affirmed in the “ Supreme Court.” Tp make this judgment one from which an appeal ought to have been granted, it should have been shewn to have been a final one—-so far from it, however, that pn examination it appears to be nothing more than an interlocutory order; tranferring the cause to an other tribunal, there to be finally decided on. This order so fár from making a final decision of the cause, decides nothing about it, leaves the merits untouched, and, merely decides that another tribunal shall examine and pronounce on it. Whatever decision the Court to which it is transferred, may give, on ají «ai hearing of the parties, an appeal will lie frÓm it. So that if the Court should now support this motion, that an appeal may be taken, from an order like this, it will virtually decide that there may be two final decisions, in a cause, from which an appeal may be had.
Baldwin in reply:
If this Court has not the power, to compel an appeal, in a case where the law gives one, it will be completely giving the Inferior Courts a superior and controuling power over the supreme tribunal of the State, and will cause its jurisdiction to be exercised at their discretion : a doctrine, so fraught with dangerous consequences, could not excite a moment’s apprehension of being fa-vourably viewed by the Court. The same ans *181 wer suggested itself to. the second objection, made by the opposite counsel, that the removing of that cause was a judicial act, and that the Judge below was the proper person to decide on the propriety of giving an appeal and not this Court—this reasoning, if carried into effect, wiU equally vest the jurisdiction of the supreme tribu, nal in the District. Courts, and enable them to give or withhold jurisdiction, at pleasure.
As to the decision not being a final one—it was evident the act of the Legislature contemplated giving an appeal from the final decision of the Court, in which the cause is depending, as well as a final decision of the cause itself. But that independent of tfait—this cause was clearly dismissed, not removed in conformity to the áct and that consequently an appeal ought to have been granted.
The Court requested a further argument at next term.